UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PETER YAUKEY                                          CIVIL ACTION

VERSUS                                                NO. 07-291

TEACHERS INSURANCE COMPANY                            SECTION B(4)

ORDER AND REASONS

Before the Court is Plaintiff's Motion to Enforce Settlement, for Penalties and Attorney's Fees, and to Set Aside Dismissal. (Rec. Doc. 50). The motion is opposed. (Rec. Doc. 52). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Plaintiff's Motion to Enforce Settlement, for Penalties and Attorney's Fees, and to Set Aside Dismissal (Rec. Doc. 50) is **GRANTED in part and DENIED in part**. Plaintiff's Motion to Enforce Settlement is **GRANTED** with respect to the partial settlement agreement of the parties regarding the structure and **DENIED** with respect to the unenforceable allocation of the remaining $90,000 between ALE and contents.

BACKGROUND

Plaintiff's home, which was covered by an insurance policy issued by Defendant, was damaged during Hurricane Katrina. On July 28, 2008, the first day of trial, a settlement was reached and the settlement agreement was read into the record. The parties agreed that Defendant would pay Plaintiff within thirty days $100,000.00

1

total, $10,000 for structural repairs and $90,000 for ALE and contents. When the Court addressed Plaintiff Mr. Yaukey directly and asked if he understood the settlement agreement, Mr. Yaukey asked whether the $90,000.00 would be split evenly between ALE and contents. The Court responded that the Court did not know how it would be split and commented, "Most of your claim is ALE. Your contents claim isn't worth more than $4,000.00 up to the point that you heard your testimony." (Transcript, Rec. Doc. 60 at 4). The Court went on to state, "But if you are asking whether or not most of that goes to the contents because you are worried about maybe some kind of income tax issues, you may well go to trial." *Id*. Finally, Mr. Yaukey, when directly asked by the Court whether he agreed or disagreed with his lawyer's settlement proposal, stated that he agreed. *Id*. at 5.

On August 12, 2008, Plaintiff's attorney, Albert Nicaud, emailed counsel for Defendant, Michael Holoway, asking that Defendant issue to Plaintiff a $10,000.00 check for structure and a $90,000.00 check for contents. After receiving no response from Defendant, Plaintiff's attorney again emailed Defendant's attorney ten days later on August 22, 2008. Plaintiff received an email response from Defendant on August 26, 2008, stating that Defendant did not believe that the $90,000.00 could be justified as contents only. In this same email, Defendant expressed the "recollection" that the $90,000.00 payment "was to be primarily allocated to ALE,

2

not contents" and requested the thoughts and suggestions of Plaintiff. According to Plaintiff's August 26, 2008 email response, the parties originally agreed to a 60/40 split of the contents and ALE unless Plaintiff requested otherwise. Plaintiff noted in this same email that he later requested that the entire $90,000 be allocated to contents, but ultimately suggested a breakdown of $15,000 in ALE and $75,000.00 in contents based upon Plaintiff's claim of $160,000 in contents and $40,000.00 in ALE. Defendant then offered $40,000 in ALE and $50,000 in contents on August 27. Plaintiff's attorney asserts that he left phone messages with Defendant's attorney following Defendant's August 27 offer but did not receive a response. Plaintiff eventually emailed Defendant on September 11, reiterating the $15,000 ALE/$75,000 contents split and expressing some frustration that Defendant waited until the twenty-ninth day to inform Plaintiff that the checks could not be issued as Plaintiff had requested in his August 12 email. Plaintiff then filed this motion to enforce settlement.

The parties communicated after the filing of the motion and Plaintiff emailed Defendant on October 3, asking that Defendant send a check indicating $75,000 for contents and $15,000 for ALE and expressed that Plaintiff was "not interested in signing a release before the hearing on the penalties for late payment." Defendant responded in an October 6 email that it did not offer or agree to pay the $75K contents/$15K ALE split but only wanted to

3

know if such a split would resolve the matter. Defendant also expressed that the parties "must have a reasonable factual basis for the way the settlement proceeds are allocated" and further stated that Plaintiff 'has indicated that the reason he wants most of the funds to be redesignated as contents rather than ALE is so he can recover his ALE losses from FEMA.

Plaintiff asserts that he is now entitled to penalties in the amount of $200,000, two times the damages which Defendant agreed to pay in settlement, for Defendant's failure to pay the settlement within 30 days in accordance with LSA R.S. 22:1220B(2)[1]. Plaintiff cites *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 867 So. 2d 1112 (La. 2003)(holding that an award of penalties for insurer's failure to pay settlement within 30 days did not require proof of an arbitrary or capricious failure to timely pay settlement funds). Plaintiff also argues that allocation of payment can be based upon the value of Plaintiff's claims and contends that Defendant's proposed breakdown of $40K ALE and $50K contents is arbitrary. Plaintiff asserts that any delay is solely attributable to Defendants who did not respond to Plaintiff's allocation inquiries until a day or two before payment was due. Plaintiff further argues that this delay is typical behavior for Defendant and cites the three years of post-Katrina litigation. Plaintiff further asserts that the only obligation Defendant has to the mortgage company, Road Home, or the

---

[1] Currently cited as La R.S. 22:1973.

4

SBA is "to have a reasonable justification for its division of settlement proceeds."

Plaintiff also argues that it is entitled to attorney's fees under La. R.S. 22:658 and that those fees should be 25% of the amount recovered, including penalties, as Plaintiff's contract with his attorney is a 25% contingency fee of the gross proceeds. Plaintiff cites *Ibrahim v. Hawkins*, 845 So.2d 471 (La. App. 1st Cir. 2003)(awarding a one-third fee of the total amount recovered from the insurer, including penalties, for the contingency fee contract providing for a one-third fee). Plaintiff also argues that Defendant's behavior is "inexcusable, arbitrary, and capricious" and that Plaintiff is therefore entitled to penalties of 50% of the amount due to insured plus reasonable attorney's fees.

Defendant argues that La. R.S. 22:1220 does not apply because the agreement of the parties was never "reduced to writing" and asserts that *Sultana* is distinguishable from the present case because the parties in that case had agreed in writing to the terms of the settlement. Defendant further argues that Plaintiff's demands that the vast majority of the allocation be for ALE is not reasonably substantiated by the facts and is in direct contrast to the guidance of the Court at the time the agreement was stated on the record "that the bulk of Plaintiff's claim was in ALE and that his contents claim was worth no more than $4,000." (Rec. Doc. 52

5

at 4; Ex. A, p. 4). Defendant also alleges that Plaintiff sought the 100% allocation for contents so that he could recover additional ALE money from FEMA. Defendant expressed its willingness to continue to make good faith attempts to resolve the matter. Defendant blames the delay in payment on the parties' inability to come to a resolution as to the allocation of the payment.

Defendant argues that La. R.S. 22:1471.1 requires Defendant to "delineate both the maximum coverage available under each category of coverage as well as the actual total amount actually paid under each category of coverage" and asserts that Plaintiff's allocation demands do not "comport with the settlement agreement." (Rec. Doc. 59 at 2). Defendant references third parties such as mortgage holders, SBA, and La. Road Home who have rights to the homeowner's funds depending on which coverage is designated and cites the La. Attorney General's lawsuit against insurers alleging fraud in the allocation of payments. *See state of Louisiana v. AAA Insurance Co. et al*, Civil Action No. 07-5528 c/w 05-4182, Section K(2), Eastern District of Louisiana. Defendant asserts that the Court should reject Plaintiff's efforts to receive a windfall. Defendant also points out that the Court went to great lengths to make sure Plaintiff understood and agreed to the settlement agreement. Defendant asks that Plaintiff be ordered to enter into the agreement reflected in the record with the coverages as stated or

alternatively that the Court rescind the dismissal and allow the matter to proceed to trial.

## DISCUSSION

**A. Enforceability**

Louisiana law governs the construction and validity of the settlement agreement in this case. *See Lockette v. Greyhound lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987)(finding that in a diversity action federal courts apply the principles of state contract law to determine the enforceability of settlement agreements). Settlement agreements, which are also known as "compromise" agreements, are governed by Louisiana Civil Code Articles 3071-3078. *City of Baton Rouge v. Douglas*, 984 So.2d 746, 748-49 (La.App. 1 Cir. 2/8/08). Although these articles are the result of the Legislature's 2007 amendments to the Louisiana Civil Code articles on compromise, "they were not intended to change the law, but to merely reproduce the substance of the former articles and to clarify and reflect principles contained in the former articles and jurisprudence." *Id.* See also 2007 Official Revision Comments, LSA-C.C. arts. 3071-3078. Hence, jurisprudence on the pre-amendment articles of the Louisiana Civil Code relative to compromise, particularly Article 3071, provide valid guidance on the interpretation and application of the present articles on compromise.

Louisiana Civil Code article 3071 provides: "A compromise is

7

a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." Louisiana Civil Code article 3072 provides: "A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings." "According to the cited civil code articles and jurisprudence, for a settlement agreement to be valid and enforceable, it must either be recited in open court and capable of being transcribed from the record of the proceeding or be in writing and signed by the parties or their agents." *Baton Rouge*, 984 So.2d at 749; *see also Sullivan v. Sullivan*, 671 So.2d 315, 317-318 (La. 1996); *Suire v. Lafayette City-Parish Consolidated Government*, 907 So. 2d 37 (La. 4/12/05); and *Trahan v. Coco Cola Bottling Co. United*, 2004-0100 (La. 3/2/05); 894 So.2d 1096, 1104.

A compromise agreement, like other contracts is the law between the parties and must be interpreted according to the true intent of the parties. *Suire*, 907 So.2d at 55; *Trahan*, 894 So.2d at 1106. The party attempting to rely on the existence of a compromise agreement "bears the burden of proof to show that the requirements for a valid compromise are present." *Id*. Recital of agreements in open court must make full disclosure of the terms so that all parties involved are fully appraised of their rights and obligations. *Abadie v. Metropolitan Life Insurance Company*, 712

So.2d 932, 934, 97-932 (La.App. 5 cir. 4/9/98). Furthermore, a "compromise is valid only if there is a meeting of the minds between the parties as to exactly what they intended when the compromise was reached." *Id.* *See also Onstott v. Certified Capital Corporation*, 950 So.2d 744, 746 (La.App. 1 Cir. 11/3/06)(reciting the court's earlier finding that a settlement agreement was unenforceable because there was "no meeting of the minds as to the rights and obligations of the parties under the terms of the agreement").

The transcript of the settlement agreement read in open court indicates that the parties agreed that Defendant would pay Plaintiff $10,000.00 for structural repairs. Next the parties firmly agreed that Defendant would pay Plaintiff $90,000.00, to be split between ALE and contents. The parties at that time did not agree to the specific term of percentage breakdown between ALE and contents. The Court addressed Plaintiff directly regarding his understanding of and agreement to the settlement agreement. Plaintiff appeared to have some concerns regarding the percentage breakdown between contents and ALE, and the Court indicated that it did not care how the parties choose to divide the proceeds but indicated that, based upon the testimony presented so far, it appeared that the bulk of Plaintiff's claim was ALE, with only about $4,000 in contents. (Transcript, Rec. Doc. 60 at 4). The Court also informed the Plaintiff, "[I]f you are asking whether or

9

not most of that goes to the contents because you are worried about maybe some kind of income tax issues, you may well go to trial." *Id.*

Correspondence between the parties indicates that the parties never came to an agreement as to the ALE/Contents breakdown of the $90,000.00 payment. There is an enforceable firm agreement between the parties that a sum of $90,000 would also be paid in compromise of the ALE and contents claims. However, full disclosure of the terms of that allocation was not made and there was no meeting of the minds regarding the allocation percentage between contents and ALE. The allocation issue is the sole remaining issue for trial, if necessary.

**B. Penalties**

Plaintiff asserts that, under La. Rev. Stat. § 22:1220, he is entitled to penalties of two times the agreed settlement amount for Defendant's failure to timely pay the settlement. Plaintiff also argues that he is entitled to 50% of the amount due plus reasonable attorney's fees under La. Rev. Stat. § 22:658. Section 22:658(B) refers to settlement agreements for third party claims and is inapplicable in the present case as the present case involves damages incurred by the insured, not a third party.[2]

---

[2]La. Rev. Stat. § 22:658 states in pertinent part:
A.(2) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any third party property damage claim and of any reasonable medical expenses claim due any bona fide third party claimant within thirty

La. Rev. Stat. § 22:1220 provides that statutory penalties may be assessed against insurers for failure to timely pay settlements and states in pertinent part:

> (B) Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed ...
> (2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
> (C) In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

Defendant argues that 22:1220 is inapplicable because the settlement agreement was never reduced to writing. Defendant attributes the delay in payment to Plaintiff's requests that all or most of the $90,000.00 go to contents and asserts that Plaintiff

---

> days after written agreement of settlement of the claim from any third party claimant.
> ...
> B.(1) ... failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2), when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damage on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured ... or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs.

B(1) provides penalties and attorneys fees for settlements referenced in A(2), which applies to settlements for third party claims. For further analysis of La. Rev. Stat. 22:658, see *Chateau*, 2008 WL 4432368 at *7. The case Plaintiff cites in support of attorney's fees under § 22:658, *Ibrahim v. Hawkins*, 845 So.2d 471 (La. App. 1st Cir. 2003), involved an award of penalties and fees after trial on the merits rather than a settlement agreement.

"sought to completely change the terms of the agreement." (Rec. Doc. 52 at 4). In support of this changed terms argument, Defendant cites the transcript of the settlement agreement in which the Court stated that the testimony heard up to that point indicated that the bulk of Plaintiff's claim was ALE and that only $4,000.00 of contents damage had been demonstrated thus far. (See Transcript of Settlement, Rec. Doc. 52, Ex. A at 4). Defendant attributes its hesitance to agree with Plaintiff's demands to Louisiana law requiring insurers to "provide the insured with a statement that accurately reflects the amount paid under each category of coverage" and the rights of third parties, such as La. Road Home, the United States Small Business Association, and mortgage holders, whose rights to the homeowners' funds often depend on the coverage designations. (Rec. Doc. 59 at 2)(citing La. Rev. Stat. 22:1471.1). In support of its responsibility to accurately appropriate payments, Defendant references the Attorney General's suit against insurers alleging fraud in the allocation of payments for coverages, *State of Louisiana v. AAA Insurance Co.*, Civil Action 07-5528, Section K(2), United States District Court for the Eastern District of Louisiana.

Plaintiff does not respond to Defendant's argument regarding reducing the settlement agreement to writing and instead accuses Defendant of being unresponsive to Plaintiff's efforts to timely finalize settlement. Plaintiff argues that Defendant's only

12

obligation to interested third parties is that the insurer have a reasonable justification for its division of settlement proceeds. Plaintiff asserts that his breakdown of $15,000.00 in ALE and $75,000.00 in contents is reasonable because it is based upon Plaintiff's damage claim for $160,000 in contents and $40,000 in ALE.

Judge Fallon recently addressed the issue of reducing settlement agreements to writing for purposes of determining penalties for failure to timely pay. *Chateau Living Center, LLC v. Hanover Insurance Company*, 2008 WL 4432368 (E.D.La. 2008). The *Chateau* Court noted that Louisiana Courts of Appeal are split on the issue of whether a settlement agreement is reduced to writing for purposes of penalty assessment when entered in open court or only once the transcript is entered into the record or otherwise supplied in written form. *Id*. at *3. *Compare Batson v. S. La. Med. Ctr.*, 97-1382, pp. 13-14 (La. App. 1 Cir. 9/25/98); 724 So.2d 782, 789 (holding that settlement agreement entered into in open court was not reduced to writing until written transcription was entered into the record), with *Fruge v. Classic Commc'ns, Inc.*, 04-1348, pp. 4-6(La.App. 3 Cir. 2/2/05); 893 So.2d 222,226 (holding that settlement agreement was reduced to writing when it was entered into in open court). La. Civ. Code art. 3072, which determines the existence of a settlement agreement provides that the "compromise shall be made in writing or recited in open court."

However, La. Rev. Stat. § 22:1220(B)(2) imposes statutory penalties for failure to tender payment thirty days after the agreement has been "reduced to writing." Noting the distinctions between the statutes and the admonition of Louisiana courts that §1220(B)'s penalties be strictly construed and not lightly imposed, the *Chateau* court agreed with the *Batson* view and held that a settlement agreement entered into in open court is not reduced to writing until the transcript is entered into the record. *Chateau,* 2008 WL 4432368, at *3-4.

An award of penalties under 22:1220 does not require proof that the insurer's failure to pay be arbitrary or capricious and "Section (B) requires only that the insured ... show that failure of an insurer to timely pay the settlement be knowingly committed." *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 867 So.2d 1112, 1117-19 (La. 2003)(internal quotes omitted). Section (C) does not require a claimant to prove damages before recovering penalties. *Id*. at 1118. However, the court's grant of penalties under 22:1220(C) is discretionary, and Section 22:1220(C) has no minimum penalty provision. *Id*. at 1117; *Adams v. Stratton*, 02-224 (La. App. 5 Cir. 10/16/02); 831 So.2d 290, 292 (*citing Harrington v. Cato Corp.*, 32-055 (La. App. 2 Cir. 6/16/99); *see also Sultana*, 860 So.2d at 1115 n.5(noting that the Court was not faced with the question of whether §22:1220(C) imposes a minimum penalty).

The transcript of the settlement agreement in the present case

did not appear in the record until attached as an exhibit to Defendant's Response Memorandum in opposition to the present motion to enforce, filed on October 3, 2008. (Rec. Doc. 52). The Court did not enter the transcript into the record until November 17, 2008. (See Rec. Doc. 60). Hence, the earliest date the agreement could have been considered reduced to writing for the purpose of imposing statutory penalties was October 3, 2008. Defendant insurer has not yet paid the agreed upon $10,000.00 for structural repairs and therefore has breached its duty under § 1973(B) according to the strict interpretation and application of that section articulated in *Sultana*. However, correspondence between the parties, both before and after the filing of the motion to enforce, and memoranda submitted by the parties indicate Defendant's desire to resolve the issues and Plaintiffs desire to secure penalties and attorney's fees.[3] The correspondence between the parties indicates confusion and disagreements regarding the settlement entered into in open court. The Court finds that the insurer's concerns regarding reasonable allocation and any implications of fraud regarding the rights of third parties are valid concerns. Moreover, insurer's decision to withhold payment on the agreed upon amount in light of the disagreed portion is understandable. Hence, this Court, utilizing the discretion

---

[3] See Rec. Doc. 59 at 3 and attached Exhibits, indicating Plaintiff's refusal to sign a release prior to the hearing on the motion to enforce.

afforded under § 1220(C), which has no minimum penalty, orders that Defendant pay Plaintiff $1,000.00 in penalties for Defendant insurer's failure to timely pay the agreed $10,000.00 for structural repairs.

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion to Enforce Settlement, for Penalties and Attorney's Fees, and to Set Aside Dismissal (Rec. Doc. 50) is **GRANTED in part and DENIED in part**. Plaintiff's Motion to Enforce Settlement is **GRANTED** with respect to the partial settlement agreement of the parties regarding the structure. Defendant is thereby ordered to pay Plaintiff $10,000.00 for the structure in accordance with the settlement agreement. Defendant is further ordered to pay Plaintiff $1,000.00 in penalties for failure to pay Plaintiff the undisputed $10,000.00 within thirty (30) days. Plaintiff's request for attorney's fees is **DENIED**. Plaintiff's Motion to Enforce Settlement is **DENIED** with respect to the unenforceable allocation of the remaining $90,000 between ALE and contents. If this action is reopened for trial, the sole issue will be determining the amounts to be allocated between ALE and contents. The Court is concerned with an alleged statement that Plaintiff seeks a lower allocation for ALE in order to recoup ALE from the federal government, allegedly without sound and reasonable justification for imposing that insured obligation upon FEMA. A telephone conference will be held with parties' counsel on **Tuesday,**

**May 12, 2009 at 10:00 a.m.**, to be initiated by the Court, in order to consider amicable resolution of the allocation issue and other options if needed.

New Orleans, Louisiana, this 1st day of May, 2009.

_____
UNITED STATES DISTRICT JUDGE